876 F.2d 1197
 14 Fed.R.Serv.3d 233
 Michael Wayne VEILLON, Plaintiff-Appellee,
v.
EXPLORATION SERVICES, INC., Defendant,
The Travelers Insurance Company, Intervenor-Appellant,
and
Fred E. Salley & Charles N. Branton, Movants-Appellants.
 No. 88-3362.
 United States Court of Appeals,
Fifth Circuit.
 July 7, 1989.
 
 Charles N. Branton, Fred A. Salley, New Orleans, La., for intervenor-appellant and pro se.
 Pamela A. Tynes, Paul J. Guillot, Lafayette, La., for plaintiff-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before THORNBERRY, WILLIAMS, and DAVIS, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 On December 20, 1984, plaintiff-appellee Michael Veillon was injured while working aboard a seismic marsh rig owned and operated by his employer Exploration Services, Inc. At all relevant times, Exploration Services was insured by The Travelers Insurance Company (Travelers) whose policy served the dual purposes of covering employer liability and worker's compensation claims. Veillon brought suit against Exploration Services, Travelers, and Texaco, Inc., the charterer of the seismic rig, based on the Jones Act, 46 U.S.C.App. Sec. 688, and general maritime law. Travelers subsequently filed a complaint of intervention seeking reimbursement for any sums paid to or on behalf of Mr. Veillon in discharging its obligations as Exploration Services' worker's compensation carrier.
 
 
 2
 Pursuant to its obligations under the policy issued to Exploration Services, Travelers paid Veillon $4515 in maintenance and $10,203.44 in cure. At the early stages of this litigation it was uncontested that Travelers' coverage for maintenance and cure was limited to $25,000. Travelers attempted to tender its remaining coverage to Veillon, but such offers were apparently rejected. Thereafter, on August 10, 1987, Travelers moved the court for permission to pay into the court's registry the balance of its policy limits ($10,281.56) and to be dismissed from the suit as a party-defendant. The district court granted Travelers' motion on August 26, 1987 and dismissed the claims against Travelers.
 
 
 3
 In September 1987, Veillon terminated the services of his then-attorney Leonard Cline and hired Paul Guilliot. Ms. Pamela Tynes, an associate of Mr. Guilliot, was eventually substituted for Mr. Guilliot as Veillon's counsel. Ms. Tynes discovered a possible ambiguity in Travelers' maritime endorsement which, if construed against Travelers, would have the effect of raising its policy limits from $25,000 to $100,000. Based on this discovery, on October 23, 1987, Ms. Tynes filed a motion with the court to reconsider the dismissal of Travelers. In early January 1988, after construing the terms of the policy in a light least favorable to the insurer, the district court ordered Travelers reinstated as a party-defendant. The funds deposited by Travelers remained in the court's registry.
 
 
 4
 Having been reinstated as a defendant in the case, Travelers, through its attorneys Fred Salley and Charles Branton, filed a motion for reconsideration of its reinstatement or, alternatively, for summary judgment. This motion was to be considered at a status conference on February 11, 1988. By letter dated February 8, 1988, Fred Salley requested the presence of a court reporter at the conference. No court reporter was present as requested. At the conference, the district court refused to consider Travelers' motion for reconsideration or, in the alternative, for summary judgment despite the fact that Veillon filed no opposition. The case remained set for trial for February 22, 1988.
 
 
 5
 Shortly after the February 11 status conference, Ms. Tynes and Mr. Salley entered settlement negotiations. Apparently, Ms. Tynes agreed to inform the court that Travelers' motion for reinstatement or, alternatively, summary judgment could be entered in exchange for Travelers' agreement not to oppose a motion to withdraw the funds from the court's registry which Veillon planned to file at a later date. The supplemented record contains several correspondences between Ms. Tynes and Mr. Salley which suggest the terms of the agreement. The supplemented record and appellate briefs suggest that Travelers wanted an actual judgment entered to the effect that its policy limit for maritime injuries provided an unambiguous limit of $25,000. Thousands of similar policies were in effect, and a judgment of this nature would presumably deter other insureds from raising the policy limits issue. In any event, the record does not contain an actual agreement executed by both parties.
 
 
 6
 On the morning of February 22, 1988, the first day of trial, the court entertained several pre-trial motions. Ms. Tynes began the discussion by stating, "[t]he plaintiff would like to dismiss Travelers Insurance Company and pursuant to the agreement that we would be allowed to withdraw the funds which have been deposited into the registry of the Court without any objection from Travelers." Mr. Salley explained that "[t]he agreement was that [Ms. Tynes] would note to the court her lack of objection to the motion to reconsider and motion for summary judgment filed by Travelers Insurance Company. For that, we would withdraw from the case."
 
 
 7
 In an attempt to simplify matters, the district judge characterized the motion as one by the plaintiff to dismiss its claims against Travelers in return for Travelers agreement not to oppose Veillon's future motion to withdraw the funds from the registry. Mr. Salley objected to this characterization because the resulting dismissal would not intimate a victory for Travelers on the coverage issue as would a summary judgment. Despite Mr. Salley's objection, the court granted the plaintiff's motion to dismiss. Mr. Salley again tried to interject the terms of the agreement into the proceeding at which point the court asked, "Travelers has no further interest in those funds [in the court's registry]." To which Mr. Salley responded, "That's correct." The court then excused Mr. Salley and his client Travelers from further participation in the trial.
 
 
 8
 The plaintiff's claims against Texaco and Exploration Services were tried on February 22 and 23. On April 27, 1988, the court rendered its findings of fact and conclusions of law in which the plaintiff's claims against both defendants were dismissed. The court entered its final judgment on the pre-trial dismissal of Travelers and post-trial dismissal of Texaco and Exploration Services on April 27.
 
 
 9
 Shortly after the court entered judgment against the plaintiff, Mr. Branton filed a motion to withdraw funds from the registry of the court on behalf of Travelers. Despite having disavowed any interest in the funds at the February 22 proceeding, Mr. Branton argued that, since the plaintiff had no right to the funds, the money should be returned to Travelers. On behalf of the plaintiff, Ms. Tynes opposed the motion to withdraw based on Travelers prior dismissal from the suit. Travelers filed a supplemental memorandum to its motion to withdraw arguing that Travelers and the plaintiff had never reached a settlement agreement cognizable under applicable Louisiana law. On May 23, Ms. Tynes filed a response to Travelers' supplemental memorandum again asserting the groundlessness of Travelers' motion based on its prior tender of its policy limits and dismissal from the suit. Ms. Tynes also requested the court to impose Rule 11 sanctions.
 
 
 10
 A hearing was held on May 25, 1988 to resolve the pending motion to withdraw funds. Based on the February 22 transcript reflecting Travelers' dismissal from the suit and relinquishment of rights to the deposited funds, the court denied Travelers' motion and, pursuant to Rule 11, imposed a $750 sanction on attorneys Branton and Salley.
 
 
 11
 Appellant Travelers appeals all adverse rulings from the February 11 denial of its unopposed motion for reconsideration to the denial of its motion to withdraw funds. Also on appeal, Messrs. Branton and Salley appeal the imposition of Rule 11 sanctions.
 
 Discussion
 A. Travelers' Claims
 
 12
 Travelers raises two objections with respect to the events which transpired at the February 11, 1988 status conference. As discussed above, after the court reinstated Travelers as a defendant, Travelers filed a motion for reconsideration or, in the alternative, for summary judgment. Ms. Tynes, on behalf of the plaintiff, did not oppose this motion. Nevertheless, at the February 11 conference, the district court refused to entertain Travelers' unopposed motion. Instead, the court ruled that the case should proceed to trial which was scheduled to begin on February 22. Travelers claims that the district court erred in refusing to grant its motion. We disagree. A district judge has the discretion to deny a Rule 56 motion even if the movant otherwise successfully carries its burden of proof if the judge has doubt as to the wisdom of terminating the case before a full trial. See Marcus v. St. Paul Fire and Marine Insurance Co., 651 F.2d 379, 382 (5th Cir.1981); C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2728 (1983). We find no abuse of discretion under the present circumstances.
 
 
 13
 Travelers also claims that the denial of its unopposed motion was exacerbated by the court's refusal to allow a court reporter to attend the February 11 conference. The record indicates that Travelers' counsel requested the presence of a court reporter on February 8. Travelers cites as authority for its position the Court Reporters Act, 28 U.S.C. Sec. 753(b), which provides in part:
 
 
 14
 one of the reporters appointed for each such court shall attend at each session of the court and at every other proceeding designated by rule or order of the court or by one of the judges, and shall record verbatim by shorthand or by mechanical means which may be promulgated by the Judicial Conference: ... (3) such other proceedings ... as may be requested by any party to the proceeding.
 
 
 15
 This court has held that the requirements of this Act are mandatory, not permissive, Calhoun v. United States, 384 F.2d 180, 183 (5th Cir.1967), but that violations of the statute do not constitute reversible error per se. Id. at 184. Rather, the party alleging error must make some showing that the reporter's absence was prejudicial. See United States v. McGarrity, 559 F.2d 1386, 1388 (5th Cir.1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978) (finding failure of record to contain all proceedings harmless under the circumstances). Travelers' appellate brief fails to indicate the manner in which it was prejudiced by the court's refusal to allow a reporter's presence at the status conference; for example, Travelers does not argue that an unrecorded conversation occurred which would have reflected an abuse of the court's discretion. Moreover, the court's refusal to grant Travelers' motion was, as discussed, within the court's discretion. Thus, the refusal itself cannot be said to be the prejudicial incident. We therefore find any error to be harmless.
 
 
 16
 Travelers next attacks the court's May 25 order refusing to grant its motion to withdraw funds. Travelers claims that when it originally deposited the funds into the registry it did so pursuant to Federal Rule of Civil Procedure 67 which allows a party to retain an interest in the property deposited. Travelers argues that its right to the funds is now superior to the plaintiff's because of the court's April 27 take-nothing judgment in favor of the defendants.
 
 
 17
 Rule 67 clearly permits a party to deposit property into the court while retaining an interest therein. We need not today decide whether a party must articulate its desire to retain an interest in the property at the time of its deposit. We do, however, find it curious that Travelers conditioned its willingness to pay its remaining limits into the registry on its dismissal from the suit. Nevertheless, regardless of whether Travelers relinquished its interest in the funds at the time the money was deposited, it is clear that Travelers disavowed any interest in the funds at the February 22 pre-trial hearing. As mentioned above, when the district judge stated that Travelers had no further interest in the funds, Mr. Salley for Travelers responded, "That's correct."
 
 
 18
 Travelers' counsel now argues that the February 22 transcript is inaccurate and that in fact Mr. Salley did not relinquish Travelers' rights to the funds. We reject this tact. The transcript "shall be deemed prima facie a correct statement of the testimony taken and proceedings had." 28 U.S.C. Sec. 753(b) (Supp.1989). Travelers' counsel has made no attempt to pursue the procedural avenues, e.g. a Rule 60(a) motion, available to correct clerical mistakes in the record. Instead, counsel merely asserts that the record is wrong. This unsubstantiated assertion is hardly sufficient to overcome the statutory presumption of accuracy.
 
 
 19
 We hold that, based on Travelers' February 22 relinquishment of any interest it may have retained in the deposited funds, the district court's denial of Travelers' motion to withdraw such funds was wholly proper.
 
 
 20
 B. Messrs. Branton and Salley's Claims: The Rule 11 Sanctions
 
 
 21
 The court considered Travelers' motion to withdraw funds from the court's registry "about as frivolous as any motion could be that has been brought before the Court." The court assessed a $750 sanction against both Messrs. Branton and Salley to recompense Ms. Tynes for her preparation and travel expenses incurred in addressing the motion. We utilize the abuse of discretion standard in reviewing an assessment of Rule 11 sanctions. Thomas v. Capital Security Services, Inc., 836 F.2d 866, 872 (5th Cir.1988) (en banc).
 
 
 22
 This court has held that Rule 11 sanctions "can be imposed only on the attorneys who sign a document, or on the clients that the signing attorneys represent." Robinson v. National Cash Register Co., 808 F.2d 1119, 1128 (5th Cir.1987); Thomas, 836 F.2d at 875 n. 13. Mr. Branton alone signed Travelers' motion to withdraw. Thus, the court's sanctioning of Mr. Salley was an abuse of its discretion.
 
 
 23
 Mr. Branton argues that the imposition of sanctions against him violated his due process rights. We disagree. Due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest. Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). "Due process requires that the attorney ... has fair notice of the possible imposition of Rule 11 sanctions and of the reasons for their imposition." Donaldson v. Clark, 819 F.2d 1551, 1559-60 (11th Cir.1987). "Notice may be in the form of a personal conversation, an informal telephone call, a letter, or a timely Rule 11 motion." Thomas, 836 F.2d at 880 (emphasis added). Notice may also come from the court. Donaldson, 819 F.2d at 156.
 
 
 24
 As for the quantum of notice required, the Eleventh Circuit has stated,
 
 
 25
 If an attorney is said to have submitted a complaint without any basis in fact, Rule 11 alone should constitute sufficient notice of the attorney's responsibilities since the rule explicitly requires the attorney to certify that a complaint is well grounded in fact. On the other hand, questions of whether an attorney made a good faith argument under the law or whether an attorney interposed a pleading, motion, or other paper for an improper purpose are more ambiguous and may require more specific notice of the reasons for contemplating sanctions.
 
 
 26
 Donaldson, 819 F.2d at 1560. In the instant case, in addition to the imputed notice Rule 11 imparts, Ms. Tynes filed a timely motion for sanctions in which she reiterated the argument first raised in her original opposition to Travelers' motion. Ms. Tynes' original and supplemented motions clearly apprised Mr. Branton of the groundlessness of Travelers' motion and the possibility of Rule 11 sanctions. Under the circumstances of this case, we find both the form and content of the notice sufficient to overcome Mr. Branton's challenge.
 
 
 27
 In addition to the alleged deficiency in notice, Mr. Branton contends that the district court did not afford him an opportunity to be heard. "The accused must be given an opportunity to respond, orally or in writing as may be appropriate, to the invocation of Rule 11 and to justify his or her actions." Donaldson, 819 F.2d at 1560. Before sanctions were sought, Mr. Branton filed a motion for leave to file a supplemental memorandum to his original motion to withdraw funds. The district court granted this request. The supplemental memorandum comprehensively reviewed the entire history of the dispute in an attempt to demonstrate the merit of the motion. In addition, at the May 25 hearing, Mr. Branton engaged in a discussion with the district judge in which he contended that the court previously erred in failing to grant Travelers' unopposed motion for summary judgment and that Travelers never relinquished its rights to the deposited funds. The court immediately noted that Mr. Branton's argument rested on the assertion that the February 22 transcript was inaccurate. Although the court refused to allow Mr. Branton to argue ad infinitum, Mr. Branton did have an opportunity to respond to the claim of frivolity first raised by Ms. Tynes. The court's quick rejection of Mr. Branton's defense hardly reflects a lack of an opportunity to be heard. We hold that the nature of this opportunity to respond was appropriate under the circumstances.
 
 
 28
 For the foregoing reasons, the judgment is VACATED insofar as it imposes Rule 11 sanctions on Mr. Salley and AFFIRMED in all other respects.