Beth SPILLER, Plaintiff–Appellant,

and

Stephen Smiley Brown, Appellant,

v.

ELLA SMITHERS GERIATRIC CENTER, Defendant–Appellee.

Nos. 89–2962, 89–6176.

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1990.

Stephen S. Brown, Houston, Tex., for appellants.

Carla Cotropia, Mills, Shirley, Eckel & Basset, Galveston, Tex., for defendant-appellee.

Before GEE and DAVIS, Circuit Judges, and LITTLE, District Judge.[1]

1. District Judge of the Western District of Loui-

LITTLE, District Judge:

## I. Facts

On 14 May 1986 appellee Ella Smithers Geriatric Center fired appellant Beth Spiller. Spiller presented a race discrimination claim to the Equal Employment Opportunity Commission (E.E.O.C.) on 7 May 1987 and later brought an age discrimination claim on 3 August 1987. The E.E.O.C. denied review of her race discrimination allegation because it was presented more than 180 days after the alleged discriminatory act. The record does not reflect what action the E.E.O.C. took concerning the age discrimination claim.

Appellant Stephen S. Brown, Spiller's attorney, filed suit on behalf of Spiller in the United States District Court for the Southern District of Texas on 6 August 1987; the case was assigned to Judge Norman Black. Brown sued under a plethora of statutes including 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 2000e *et seq.* (Title VII), and 29 U.S.C. § 621 *et seq.* (the Age Discrimination in Employment Act [A.D.E.A.]). Brown also sued under the Texas common law of torts and contracts. The complaint erroneously stated that both the A.D.E.A. and Title VII claims had been submitted to the E.E.O.C. within the 180–day limitations period.

During the course of discovery, appellee moved to amend the Rule 16 scheduling order to allow additional time to file motions; Judge Black never formally ruled upon this motion. Appellee moved for summary judgment on 1 June 1989, some thirty days after the motion cut-off date. On 18 July 1989 the court granted appellee's motion for summary judgment and assessed a $5,000 sanction on Brown pursuant to Rule 11. On 27 July 1989 appellee filed a supplemental motion for sanctions under Rule 11; Judge Black gave Brown an opportunity to respond to appellee's motion, and he filed an opposition memorandum on 4 August 1989. Finally, on 12 September 1989 the court awarded appellee $20,309.38 in attorney fees. This amount included the $5,000 that the court had pre-

siana, sitting by designation.

viously assessed. Brown has now appealed both the grant of summary judgment and the imposition of sanctions.

## II. Summary Judgment[2]

Brown first argues that the lower court improperly granted appellee's motion for summary judgment. Brown's attack on the trial court's ruling is bifurcated: he argues that appellee's summary judgment motion was procedurally improper and substantively meritless.

### A. Propriety of Motions After the Cut–Off Date

First, Brown claims that the trial court should not have considered the motion because it was presented after the scheduling order's motion cut-off date had passed. The Federal Rules of Civil Procedure direct that such an order "limits the time … to file and hear motions." Fed.R. Civ.P. 16. The rules also, however, give district judges the power to modify or amend scheduling orders "upon a showing of good cause." *Id.* Although Judge Black never explicitly ruled on appellee's motion to amend the pretrial order, he impliedly granted it when he allowed appellee to file its motion for summary judgment after the original cut-off date (over Brown's objections). *Cf. Reeves v. MCI Telecommunications Corp.*, 909 F.2d 144, 144 (5th Cir.1990) (denial of motion can be inferred by inconsistent order or judgment); *Addington v. Farmer's Elevator Mutual Insurance Co.*, 650 F.2d 663, 666 (5th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981) (same).

The Fifth Circuit has repeatedly held that it will review the modification of a pretrial order "under the 'abuse of discretion' standard." *Bradley v. United States*, 866 F.2d 120, 124 (5th Cir.1989); *Lirette v. Popich Bros. Water Transportation, Inc.* 660 F.2d 142, 144 (5th Cir.1981). This court finds no abuse of discretion in Judge Black's determination that good cause existed to allow a motion after the pretrial order's motion cut-off date.

### B. The Grant of Summary Judgment

Brown also attacks the merits of the trial court's decision to grant summary judgment. Rule 56 states that summary judgment is appropriate if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. A mere scintilla of evidence will not defeat a motion for summary judgment; there must be sufficient evidence upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (summary judgment appropriate even if "there is some metaphysical doubt as to the material facts").

#### 1. Age Discrimination Under the A.D.E.A.

Spiller's age discrimination claim was ripe for summary judgment. The A.D.E.A. mandates that an aggrieved party present a claim to the E.E.O.C. within 180 days of the purported violation or lose the right to sue. 29 U.S.C. § 626(d)(1). This requirement is not jurisdictional, but is instead a "pre-condition to filing suit in district court." *Pruet Production Co. v. Ayles*, 784 F.2d 1275, 1279 (5th Cir.1986); *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir.1981) (en banc). Spiller presented her age discrimination charge to the E.E.O.C. some 450 days after the alleged act of discrimination; on its face, the claim is thus untimely.

Finding that Spiller's claim was late does not, of course, end the inquiry because the 180–day filing limit for A.D. E.A. charges is subject to equitable tolling. *Pruet*, 784 F.2d at 1279; *Coke*, 616 F.2d at

---

**2.** Brown voluntarily dismissed the Title VII claim shortly before the trial court ruled on appellee's motion for summary judgment, which was granted to appellee on all of the remaining counts. Brown has not questioned Judge Black's determination that summary judgment was appropriate for the claim brought under the Texas common law of contracts.

595; *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (Title VII case [3]). When Brown responded to appellee's motion for summary judgment on the age discrimination claim, his only argument in favor of tolling was the unsupported assertion that the Center had failed to post notices advising employees of their rights under the A.D.E.A. Brown has abandoned this ground on appeal and has instead raised a host of nebulous and confusing allegations. Clearly, tolling was not called for, and appellee was entitled to summary judgment on Spiller's age discrimination claim.

### 2. Racial Discrimination Under 42 U.S.C. § 1981

■ Summary judgment was also an appropriate mechanism for disposing of Spiller's § 1981 claim. Spiller claimed that Dalia Harrelson, a Hispanic American, discharged her because Spiller is a Caucasian. On 15 June 1989 the United States Supreme Court decided *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). *Patterson* stripped conduct occurring after the formation of a contract from the ambit of § 1981. *Id.* 109 S.Ct. at 2374. The Court's holding indicates that a claim for discriminatory discharge of an at-will employee is no longer cognizable under § 1981. *Reeves*, 909 F.2d at 145; *Lavender v. V & B Transmissions & Auto Repair*, 897 F.2d 805, 808 (5th Cir.1990). This circuit has also held that the *Patterson* decision applies retroactively. *Lavender*, 897 F.2d at 807. Therefore, summary judgment was appropriate.

■ Spiller's § 1981 claim would be ripe for summary judgment even if *Patterson*

had not foreclosed it.[4] Spiller attempted to prove discrimination by traveling the well-worn path first blazed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which set forth the four requirements to establish a prima facie case of discrimination under § 1981. Under *McDonnell Douglas*, Spiller had to show that she belonged to a protected group, was qualified for a position, was discharged from that position, and was replaced by a nonminority. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Jatoi v. Hurst–Euless–Bedford Hospital Authority*, 807 F.2d 1214, 1219 (5th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 709, 98 L.Ed.2d 660 (1988).

Spiller was unable to meet *McDonnell Douglas'* fourth criteria because she was not replaced by a Hispanic American. She could have still established a prima facie case if she could have proven that it was "more likely than not that the employer's actions were based on illegal discriminatory criteria." *Jatoi*, 807 F.2d at 1219. The trial court, however, found that the Center discharged Spiller because of her poor work performance, and this determination is amply supported by the record. The Center documented numerous instances of Spiller's negligent behavior both at that facility and at other health care complexes. The Center employed a heterogenous assortment of nurses of different races, and there was simply no credible evidence that Dalia Harrelson discriminated against Spiller. This court agrees with Judge Black that racial motivations did not prompt Spiller's discharge.

### 3. Texas Common Law of Torts

■ Finally, the lower court properly granted summary judgment on appellant's

---

**3.** Both the United States Supreme Court and the Fifth Circuit consider cases arising under either the A.D.E.A. or Title VII to be precedential for both statutes. *Coke*, 640 F.2d at 587.

**4.** If this case was before the court for a simple determination of the correctness of Judge Black's decision to grant summary judgment, our analysis would end here. Nevertheless, an analysis of § 1981's pre-*Patterson* jurisprudence on discriminatory discharge is not a meaningless judicial exercise. Rule 11 only applies to an attorney's conduct at the time the court doc-

ument is signed. Rule 11 is "[l]ike a snapshot" because it "focuses upon the instant when the picture is taken—when the signature is placed upon the document." *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 874 (5th Cir. 1988). At the time Brown filed suit against the Center, *Patterson* had not been decided. Rule 11 does not charge Brown with any duty of prognostication. *See Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 536 (5th Cir.1990) (attorney not subject to Rule 11 if subsequent caselaw undermines his argument).

so-called "public policy tort." Understandably, Judge Black had some difficulty understanding the thrust of this claim; Brown left clarification of this tort completely to the imagination, and his argument seems to involve a mishmashed analysis of the Texas common law of torts and contract.[5] Presumably, Brown's "public policy tort" refers to the trend in Texas to carve out exceptions to the at-will employee doctrine. That state's highest court has decided that a public policy halo surrounds the at-will employee doctrine; an employer may not fire an at-will employee if there is a public policy against the employer's action which is sufficiently compelling. Thus far, the Texas Supreme Court has recognized two such public policies. An employer cannot fire an employee either for refusing to commit an unlawful act or because the employee will soon become vested in a pension plan. *McClendon v. Ingersoll–Rand Co.*, 779 S.W.2d 69, 71 (Tex. 1989), *cert. granted*, —— U.S. ——, 110 S.Ct. 1804, 108 L.Ed.2d 935 (1990).

Nevertheless, summary judgment was appropriate for Brown's claim. Although public policy has created some limited exceptions to the at-will employee doctrine, wrongful discharge because of race is not among them. Texas continues to subscribe to the common law rule that an employer may normally fire an at-will employee like Spiller for any reason whatsoever. *Id.* at 70; *see also Maus v. National Living Centers, Inc.*, 633 S.W.2d 674, 677 (Tex.Civ.App.1982) (refusing to recognize contractual cause of action against health care provider for retaliatory discharge). Brown failed to cite a single case from Texas or any other state to support his allegation, and his conclusory claim was properly met by summary judgment.

## III. Sanctions

Rule 11 of the Federal Rules of Civil Procedure states, in pertinent part, that:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. Rule 11 encourages the policy of truth and candor toward the tribunal by sanctioning an attorney for filing court papers that are legally or factually unsupported or filing documents for solely dilatory reasons. *Sheets*, 891 F.2d at 535–36; W. Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 184–85 (1985). Rule 11's central purpose is to deter baseless filings and streamline the administration of justice. *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). In the case at bar, Brown argues that sanctions were not appropriate; that the procedure used to sanction him violated his due process rights; and that the amount of his sanctions was excessive.

### A. Propriety of Sanctions

This court's review of Judge Black's decision to impose sanctions is limited to determining whether he abused his discretion. *Cooter & Gell*, 110 S.Ct. at 2460; *Sheets*, 891 F.2d at 535; *Thomas*, 836 F.2d at 873. In his Memorandum and Order, Judge Black stated that:

> Plaintiff's counsel has filed numerous civil rights cases in this Court. He should be familiar with the statutes cited in this complaint. He has harassed Defendant, its counsel, and this Court with pages and pages of inarticulate claims and incoherent argument. Plaintiff's claim. *See supra* note 1.

---

5. Brown has not appealed the granting of summary judgment on the common law of contracts

memo in support of motion for summary judgment would shame a first year law student. Mr. Brown has submitted 21 pages of miscellaneous, and often irrelevant, information concerning prohibitions against discrimination in the work place. Nowhere does he apply the law to the facts of this case. His response is more of the same. He has encouraged his client in the belief that she has a legitimate complaint against the Defendant, when, in fact, this is not true.

Judge Black also based his sanctions upon Brown's misrepresentation in his complaint that he had submitted the Title VII and A.D.E.A. claims to the E.E.O.C. within the 180–day limitations period.[6]

▮▮▮ This court agrees with Judge Black that Brown's slipshod and unprofessional work demanded a Rule 11 sanction. Spiller's Title VII and A.D.E.A. allegations were both untimely, and Brown's spurious arguments do not present a reasonable excuse for his dogged pursuit of these legally insupportable claims. Brown has raised the fantastic argument (without·citing a single precedent) that receipt of an E.E.O.C. right to sue letter can magically resurrect a stale claim. Nevertheless, a right to sue letter is nothing more than a statement that a claimant has the right to have a case filed with the district court and not a determination on the merits.

Brown's attempt to create a "public policy tort" is equally sanctionable. A conclusory allegation contrary to current jurisprudence that is made without any support whatsoever does not represent a good faith argument to modify existing law. Brown's arguments resemble more of a stream of consciousness narrative than a formal legal filing.

## B. Procedure in Awarding Sanctions

▮▮▮ This circuit's en banc *Thomas* decision recognized that a court's sanctioning

decision may be affected by due process considerations, but declined specifically to address the issue. *Thomas*, 836 F.2d at 878. The advisory committee's note to Rule 11 states that a judge's decision to impose Rule 11 sanctions "obviously must comport with due process requirements," and Jurisprudence has held similarly. *Veillon v. Exploration Services, Inc.*, 876 F.2d 1197, 1201–02 (5th Cir.1989); *Donaldson v. Clark*, 819 F.2d 1551, 1559–60 (11th Cir.1987) (en banc). Specifically, attorneys must be given notice and a hearing. *Donaldson*, 819 F.2d at 1558; *Sanctions*, 104 F.R.D. at 198 (attorneys must "be given notice and an opportunity to oppose the imposition of sanctions"); *see also Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (procedural due process ordinarily requires notice and an opportunity to be heard).

▮▮▮ The notice requirement[7] for Rule 11 sanctions differs depending on the conduct subject to review. An attorney who files court papers with no basis in fact does not need any more notice than that which is provided by the existence of Rule 11 in the Federal Rules. *Veillon*, 876 F.2d at 1202; *Donaldson*, 819 F.2d at 1560; *Lepucki v. Van Wormer*, 765 F.2d 86, 88 (7th Cir.), *cert. denied sub nom. Hyde v. Van Wormer*, 474 U.S. 827, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985); *see also Link v. Wabash Railroad Co.*, 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962) (notice depends on "the knowledge which the circumstances show such party to have of the consequences of his own conduct"); *but see Tom Growney Equipment v. Shelley Irrigation Development, Inc.*, 834 F.2d 833, 836 (9th Cir.1987) (notice requirement is not satisfied by the mere presence of Rule 11). When an attorney's conduct involves the submission of a dilatory argument or one

---

6. Brown's voluntarily dismissal of his Title VII claim does not, of course, insulate him from a Rule 11 sanction if the claim was frivolous at the outset. The Supreme Court recently held that "a litigant who violates Rule 11 merits sanctions even after a dismissal" because "a voluntary dismissal does not eliminate the Rule 11 violation." *Cooter & Gell*, 110 S.Ct. at 2455.

7. *Thomas* was not completely silent on the notice necessary before a Rule 11 sanction is imposed. *Thomas*, however, did not speak of a due process right to notification but instead referred to the importance of notice to the non-violating party as a way to avoid mitigation of damages. *Thomas*, 836 F.2d at 879–80.

without any basis in law, on the other hand, there must be specific notice of the reasons for contemplating sanctions. *Veillon,* 876 F.2d at 1202; *Donaldson,* 819 F.2d at 1560. Thus, due process does not require that notice be given to the offending party in every instance before a court can impose sanctions under Rule 11. *Harmony Drilling Co., Inc. v. Kreutter,* 846 F.2d 17, 19 (5th Cir.1988).

 After it gives notice the court must also give the violating attorney an opportunity to respond to the possible sanctions. *Veillon,* 876 F.2d at 1202; *Donaldson,* 819 F.2d at 1560. This requirement does not require an elaborate or formal hearing. *Donaldson,* 819 F.2d at 1560; *Oliveri v. Thompson,* 803 F.2d 1265, 1280 (2d Cir.1986), *cert. denied sub nom. Suffolk County v. Graseck,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Brown v. National Board of Medical Examiners,* 800 F.2d 168, 173 (7th Cir.1986); *see also* Fed.R.Civ.P. 11 advisory committee's note (hearing mechanics "should depend on the circumstances of the situation"). Simply giving a chance to respond to the charges through submission of a brief is usually all that due process requires. *Veillon,* 876 F.2d at 1202; *Donaldson,* 819 F.2d at 1559–61; *Brown,* 800 F.2d at 173.

 Here, Judge Black did not need to give any prior notice to Brown when he imposed sanctions for Brown's filing factually baseless Title VII and A.D.E.A. claims. He should, however, have given notice to Brown when he sanctioned him for his meritless § 1981 claim and his insupportable Texas common law claim. Further, this court is troubled by Judge Black's failure

to allow Brown any sort of hearing before he imposed sanctions. Nevertheless, Judge Black subsequently gave Brown a chance to explain his conduct and argue against the sanctions. After the initial $5,000 sanction was imposed, appellee filed a motion for further sanctions under Rule 11. The trial court allowed Brown to submit a brief in opposition to this motion in order to explain his conduct, and the subsequent award of $20,309.33 included the initial $5,000 sanction. Although giving the violator a hearing before the court imposes sanctions may be preferable, this court declines to adopt a per se rule mandating such a presanction hearing.[8]

### C. Extent of Compensable Fees and Expenses

 Rule 11 does not provide any "free passes" to litigants who violate its mandate. Once a court finds a Rule 11 violation it must impose some form of sanction. *Thomas,* 836 F.2d at 876. The basic principle governing the choice of sanctions is that the least severe penalty that is appropriate must be chosen. *Id.* at 878.

 *Thomas* also directs that a sanctioned attorney who is ordered to pay the opposing counsel's expenses may only be liable for *reasonable* attorney fees. *Thomas,* 836 F.2d at 878–79. Finding an expense to be reasonable requires a court to examine "the extent to which the nonviolating party's expenses and fees could have been avoided or were self-imposed." *Thomas,* 836 F.2d at 879. Thus, the Fifth Circuit imposes a so-called "duty to mitigate" on the nonviolating party.[9] *Id.; Napier v. Thirty or More Unidentified Federal*

---

8. *Contra, Tom Growney,* 834 F.2d at 835–36. The Ninth Circuit has stated that due process requires a hearing before sanctions are imposed unless there are "extraordinary or exigent circumstances." *Id.* A subsequent opportunity to be heard will not cure the erroneous denial of a predeprivation hearing. *Id.* at 837.

9. Although the United States Supreme Court has not squarely addressed the issue, its recent opinion in *Cooter & Gell* strongly suggests that it would apply a similar rule. In *Cooter & Gell* the nonviolating party asked the Court to affirm the District of Columbia Circuit's determination that a court may include the expenses of defend-

ing a Rule 11 sanction on appeal in the ultimate award. The Court declined to allow such expenses, stating that "Rule 11 is more sensibly understood as permitting an award only of those expenses directly caused by the filing." *Cooter & Gell,* 110 S.Ct. at 2461. It would appear that a Rule 11 violator need not compensate the opposing counsel for expenses beyond those that are reasonably necessary to dispose of the claim. Such expenses would not be directly caused by the filing; they would instead be directly caused by the carelessness or omission of the nonviolating party.

*Agents*, 855 F.2d 1080, 1092 (3d Cir.1988); *Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir.1988).

Judge Black sanctioned Brown for the entire amount of appellee's attorney fees. Originally, he fined Brown $5,000; this amount was increased by $15,309.33 to reach the entirety of appellee's attorney fee request. Although the trial court may indeed rule that the entirety of an attorney's conduct is sanctionable, this court finds that appellee did not properly mitigate expenses. Every claim based on Title VII or the A.D.E.A. revolves around a question of time. The very first task performed by counsel in such cases should always be to check the date on which the claims were submitted to the E.E.O.C. and the date on which the commission issued the right to sue letter. Because appellee did not execute this most basic of steps, two major claims in the case at bar dragged on for three years before being dismissed.

The record contains voluminous records from appellee which supported her claim for attorney fees. Unfortunately, the copious documentation does not differentiate between appellants' different causes of action. Therefore, this case is REMANDED to the district court to determine which portion of the fees were incurred in preparing to defend against the Title VII and A.D.E.A. claims. That amount cannot be included in the Rule 11 award because appellee failed to mitigate expenses.

### D. Sanctions for Frivolous Appeal

Appellee has also asked this court to sanction Brown for bringing a frivolous appeal. An appeal is frivolous "if the result is obvious or the arguments of error are wholly without merit." *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1034 (5th Cir.1990) (quoting *Coughlan v. Starkey*, 852 F.2d 806, 811 (5th Cir.1988)). Appellee may not therefore recover the entirety of her expenses for defending this appeal; appellant was partially successful in achieving a reduction in the amount of sanctions because of appellee's failure to mitigate. Nevertheless, this court awards

appellee the amount of $1,000 for her expenses in defending the rest of appellant's patently meritless appeal.

Thus, this court AFFIRMS the lower court's granting summary judgment on all counts and REMANDS the case to Judge Black for a ruling on the extent of compensable attorney fees. Further, appellee is awarded the amount of $1,000 for defending this partially frivolous appeal.

AFFIRMED IN PART AND REMANDED.