REYNA, Circuit Judge,
concurring.
I concur with the majority opinion and the result reached. I write separately to make clear that when a court finds a Rule 11 sanction based on conduct involving the allegation and pursuit of patent infringement claims that have been found objectively unreasonable, the court is compelled, if so moved by a party, to undertake a detailed and thorough § 285 inquiry and analysis. I deviate slightly from my colleagues in the majority in that, given the record in this case, I would reverse and declare this an exceptional case and limit the remand to determination of appropriate sanctions.
I. Legal Landscape
In three separate suits that were later consolidated, Raylon, LLC (“Raylon”) alleged that numerous defendants infringed U.S. Patent No. 6,655,589 (“the '589 patent”). At the conclusion of a hearing addressing claim construction, summary judgment, and motions for sanctions, eight defendants, including appellants Complus Data Innovations, Inc., Casio America, Inc. and Casio Computer Co., Ltd., (collectively “Casio”), and Symbol Technologies, Inc. (“Symbol”) (collectively, “defendants”), prevailed on their respective motions for summary judgment of noninfringement.
Casio argued a Rule 11 motion on behalf of defendants. Casio asserted that the accused devices were missing certain limitations claimed in the '589 patent. Casio stressed that it gave Raylon advance notice that its infringement allegations were without merit, further, were objectively unreasonable.
Symbol joined Casio’s argument regarding the pivotal mounting of the display, but also moved for sanctions under Rule 11 because Raylon had disregarded claim language requiring that a printer be inside of the housing to which the pivotally mounted display is attached.
In the face of defendants’ strongly argued assertions of objective unreasonableness, Raylon maintained that its allegations were objectively reasonable, including on grounds that it relied on expert advice of patent attorneys who conducted a pre-suit investigation. At the claim construction hearing, instead of advancing arguments based on the plain language of its asserted claims, Raylon offered that its claim construction proposals were premised on the “rather unusual interpretations that are sometimes put on claim terms by the Federal Circuit and practitioners.” J.A. 14049.
*1372 The district court denied the motions for sanctions. At the hearing, and later in a written order, the district court determined that Raylon’s positions “stretched the bounds of reasonableness,” but were not “objectively frivolous.” J.A. 4; J.A. 14052. Rather than analyzing the reasonableness of Raylon’s proposed claim constructions in the context of the intrinsic record, the district court supported its ruling by weighing the reasonableness of Raylon’s settlement agreements against a damages model. See Majority Op. 1366 (citing J.A. 6); J.A. 14053-14054. The district court’s written order concluded that Rule 11 sanctions would only be warranted “[wjhere it is clear that a case lacks any credible infringement theory and has been brought only to coerce a nuisance value settlement.” J.A. 5 (emphasis added).
Prevailing parties Casio, Complus, and Symbol moved for an award of fees and a declaration that this case is exceptional pursuant to 35 U.S.C. § 285. The district court tied its § 285 objective inquiry to the earlier Rule 11 sanctions inquiry and declined to find the case exceptional. The district court did not provide detailed findings regarding whether the litigation was objectively baseless or whether Raylon brought the litigation in subjective bad faith. The ruling generally concluded that Raylon’s pivotally mounted display positions were not objectively baseless and there was no litigation misconduct that warranted an inference of bad faith. J.A. 13.
II. Distinct Rule 11 and § 285 Inquiries
Rule 11 of the Federal Rules of Civil Procedure and 35 U.S.C. § 285 of the Patent Act offer courts distinct, yet overlapping, rationales for awarding an injured party relief. In asking whether a party violated Rule 11, courts in the Fifth Circuit look only to “objectively ascertainable circumstances.” FDIC v. Maxxam, Inc., 523 F.3d 566, 586 (5th Cir.2008). By contrast, our § 285 precedent asks (1) whether the litigation is brought in subjective bad faith, and (2) whether the litigation is objectively baseless. Brooks Furniture Mfg., Inc. v. Dutailier Int’l, Inc., 393 F.3d 1378, 1381 (Fed.Cir.2005).
Rule 11 directs attorneys to focus on their obligations and responsibilities as officers of the court in making representations, while also operating as an enforcement mechanism to correct any “unusual circumstances” where a party “pursued an illegitimate purpose to increase costs or to harass a party regardless of the weight of that purpose in filing suit.” Maxxam, 523 F.3d at 586 (explaining that Rule 11 reaches those pleadings which constitute an abuse of legal purpose by discouraging dilatory or abusive tactics); see also Jenkins v. Methodist Hosp. of Dallas, Inc., 478 F.3d 255, 265 (5th Cir.2007) (“As stated by the Advisory Committee Note to Rule 11, a lawyer is required to ‘stop-and-think’ before ... making legal or factual contentions.”) (quoting Advisory Committee Notes on Fed. R. Civ. P. 11 (1993 Amendments)). Sanctionable Rule 11 conduct is distinguishable from a judgment on the merits because Rule 11 addresses the collateral issue of “whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.” Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).
Section 285 was enacted to address a patent-specific policy rationale, awarding fees in “exceptional cases” in which sanctions were necessary to deter the “improper bringing of clearly unwarranted suits.” Automated Bus. Cos. v. NEC Am., Inc., 202 F.3d 1353, 1354 (Fed.Cir.2000) (quoting Mathis v. Spears, 857 F.2d 749, 753-54 (Fed.Cir.1988)). The purpose of the stat *1373 ute has been described by this court as compensation to the prevailing party for its monetary outlays in the prosecution or defense of the suit. See Cent. Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed.Cir.1983). Such a purpose is distinguishable from Rule 11, which addresses conduct in general, because § 285 recognizes the particular strain that meritless patent litigation bears on judicial and party resources. Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1327 (Fed.Cir. 2011) (noting the burden of unnecessarily requiring a “district court to engage in excessive claim construction before it is able to see the lack of merit of the patentee’s infringement allegations”); Mathis, 857 F.2d at 758 (explaining that Congress codified § 285 to make a prevailing defendant “whole” following a gross injustice).
In non-patent contexts, a litigant is sometimes sanctioned for misleading the court, e.g., Precision Specialty Metals, Inc. v. U.S., 315 F.3d 1346, 1357 (Fed.Cir.2003), or for exhibiting sloppiness during the course of the proceedings, Spiller v. Ella Smithers Geriatric Ctr., 919 F.2d 339, 347 (5th Cir.1990) (“slipshod and unprofessional work”). But in patent cases invoking Rule 11, courts are often asked to weigh whether the substantive allegations are so weak that they are not grounded in fact and legally tenable. See, e.g., View Eng’g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986 (Fed.Cir.2000).
Here, notwithstanding whether sanctions are issued pursuant to Rule 11, § 285, or both, the offending conduct is intertwined with governing patent law. I believe that if the circumstances in a patent case result in finding that Rule 11 has been violated on grounds related to substantive positions taken or advanced, then the district court must also, when so moved by the parties, engage in a comprehensive § 285 inquiry. In my view, a § 285 inquiry is compelling where the case progresses beyond the pleading stages and a party’s unwillingness to abide by precedent controlling claim construction lends to escalation of avoidable costs.
III. Record Inferences of Bad Faith
Having determined that the challenged litigation is objectively meritless,[1] a court may examine the litigant’s subjective motivation. Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). There is a presumption that the assertion of infringement is made in good faith, Brooks Furniture, 393 F.3d at 1382 (internal citation omitted), but even so, we examine the record with care to determine, among other things, whether a party demonstrated good faith during the claim construction process. See Eon-Net, 653 F.3d at 1325. If the record indicates by clear and convincing evidence that a patentee is manifestly unreasonable in assessing and pressing its infringement allegations, then a court may infer that the claims were brought in bad faith. Eltech Sys. Corp. v. PPG Indus., Inc., 903 F.2d 805, 810-11 (Fed.Cir.1990).
Our cases have not established a precise definition for “bad faith” in the exceptional case context. We recognize the enactment of § 285 as a “bad faith equitable exception” to the American Rule on awarding fees to an alleged infringer, Mathis, 857 *1374 F.2d at 758 (internal citation omitted), and discuss “bad faith” as closely aligned with “a finding of unfairness”:
[T]he payment of attorney’s fees for the victor is not to be regarded as a penalty for failure to win a patent infringement suit. The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear.
Rohm & Haas Co. v. Crystal Chemical Co., 736 F.2d 688, 691 (Fed.Cir.1984) (emphases added) (discussing 1952 Patent Act) (quoting Park-in Theatres, Inc. v. Perkins, 190 F.2d 137, 142 (9th Cir.1951)). Against this backdrop, I interpret “bad faith” as synonymous with a patent holder’s unreasonable continued pursuit of an infringement claim that has been demonstrably shown to be based on “wrongful intent, recklessness, or gross negligence.” Phonometrics, Inc. v. Westin Hotel Co., 350 F.3d 1242, 1246 (Fed.Cir.2003) (quoting Eltech, 903 F.2d at 811).
As I have noted, I agree with and join the majority’s strong analysis and result on Rule 11 sanctions. But, unlike the majority, I believe that the district court, in the first instance, should have fully explored the existence of an inference of bad faith.[2] These consolidated cases provide fertile grounds for a determination that Raylon’s pursuit of objectively unreasonable allegations compelled the conduct of an exceptional case inquiry. While reasonable minds can — and often do — differ as to the proper construction of a given claim term, it is unreasonable minds that go to extraordinary lengths to conjure and advance through various stages of a legal proceeding unsupported arguments that are also inconsistent with established precedent in order to accuse non-infringing devices. Here, specific circumstances which, if taken in the aggregate, potentially give rise to an inference that Raylon demonstrated an awareness that its allegations lacked support.
A. Early Notice
Here the likelihood of success on infringement could have been projected simply by examining the accused devices and comparing those features element-by-element and claim-by-claim with the disclosures in the '589 patent. Rather than acknowledge that its claims could not survive, Raylon built its case on positions that misapply Federal Circuit precedent.[3] The record establishes that Raylon was not unaware as to knowledge of its substantive shortcomings because it was faced with early motions for summary judgment, a motion for judgment on the pleadings, and motions for sanctions that identified the flaws in the infringement theories.
Indeed, Casio memorialized its concerns by writing to Raylon early in the case regarding the merits of its allegations, but it appears that Raylon took no curative measures and proceeded through claim *1375 construction undeterred. J.A. 3139 (“As we have repeatedly told you since day one, these infringement allegations are violations of Rule 11.”); J.A. 3141-43; J.A. 3145-46; J.A. 3153-54 (counsel correspondence discussing perceived violations of Rule 11). This early notice at least suggests that Raylon had a duty to “stop and think,” and to investigate whether its positions were objectively baseless, but it opted to ignore grappling with the incongruence raised by visual comparison of the accused devices with the plain language of the claims.
B. “Pivotally Mounted Display”
Raylon contended that the flatly fixed displays of the accused devices could meet the “pivotally mounted display” limitation because a person could move the entire device while it was held in the user’s hand. Yet, as the majority well clarifies, this position is inconsistent with the intrinsic disclosures and Raylon cannot rely on a single, inapposite sentence in the specification to redefine the meaning of the claim. Majority Op. 1368-69. As shown in Figure 1, the display was mounted on the housing in such a manner that it could be pivoted up or down with no movement of the housing. Illustrations of the patent figures next to the accused devices emphasize the objective unreasonableness of Raylon’s infringement allegations.
[[Image here]]
The '589 patent specification teaches that the pivotally mounted display is attached to the housing and as a result the housing be made able to pivot up or down. '589 patent col.5 ll.58-61 (depicted in Figure 1). By contrast, it is readily apparent that the accused devices are fixed in a flat position and lack a display that is not, nor is it capable of, being pivotally mounted on the housing. Given the clear meaning of the claim elements, no objectively reasonable litigant would believe it could succeed by linking the “pivot” to the up and down movement of the user’s arm.[4]
C. “Interior Printer Assembly”
Raylon also asserted all seventeen claims in the '589 patent against printer-less Symbol devices by contending that an external printer attached to a separate housing would satisfy the limitation requir *1376 ing the printer assembly be mounted in the interior of the housing. To maintain its allegations, Raylon disregarded the meaning of the word “said” as presented in the claims: “a printer assembly being mounted in said interior of said housing for printing a ticket.” '589 patent col.7 ll.32-33 (claim 1) (emphases added). As our cases require, “said” refers back to an earlier use of that term in the claim. Intamin, Ltd. v. Magnetar Tech. Corp., 483 F.3d 1328, 1333 (Fed.Cir.2007); Bell Commc’ns Research, Inc. v. Vitalink Commc’ns Corp., 55 F.3d 615, 621 (Fed. Cir.1995). Here, “said housing” is referring back to an earlier use of “housing” that describes “an interior,” “an elongated slot,” and “an elongated aperture.” '589 patent col.7 ll.17-20. Despite the known requirements, Raylon glosses over the well-defined relationship between the interior printer, the housing, and remaining claim elements.
The disconnect between the accused devices and the claim language should have been apparent, but we have no indication as to whether Raylon’s expert’s conducted a visual examination of the Symbol devices and the stand alone printers. See J.A. 3975-82; 3991-4008. Again, the above figures clearly show that in the preferred embodiment of the '589 patent, a printer is housed within the device. Raylon argues that attaching a stand alone printer to the Symbol device satisfies the claim that the printer be located in the housing of the device.
The absence of analysis regarding the Symbol devices immediately raises doubt as to the credibility of Raylon’s assertions. For example, in responses to defendants’ motions for summary judgment, counsel for Raylon made only the limited statement that accused Symbol devices were analyzed by Raylon’s patent expert and that Symbol was provided claim charts that “consisted of a good faith, informed comparison of the claims of a patent against the accused subject matter.” J.A. 3972, ¶ 9; see also id. at 3969-71, ¶¶ 1-5. Raylon did not supplement the comparison with an explanation as to what the expert was relying upon or how the Symbol devices might infringe. In the end, Raylon never conceded the unavoidable reality that Symbol models did not infringe. Notably, Raylon continued to defend the reasonableness of its allegations on appeal, including during the oral argument before this court. Oral Argument, available at http://www.cafc.uscourts.gov/oralargument-recordings/all/raylonMml.
D. Undue Reliance on Expert Declarations
Instead of focusing on why its pre-suit investigation was a reasonable application of Phillips, Raylon argues that its allegations were made in good faith because it was informed by pre-suit advice it received from a patent practitioner it considered an expert. Applicable law, however, clearly states that a patent practitioner’s statements regarding the meaning of claim terms are entitled to no weight. Symantec Corp. v. Computer Assocs. Intern., Inc., 522 F.3d 1279, 1289 n. 3 (Fed.Cir.2008) (citing Sinorgchem Co., Shandong v. Int’l Trade Comm’n, 511 F.3d 1132, 1137 n. 3 (Fed.Cir.2007)). Similarly, patent practitioners are unqualified to opine on the issue of infringement. See Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1362 (Fed.Cir.2008).
The majority has ascertained that Rule 11 sanctions were necessary because Raylon did not follow standard canons of claim construction and its arguments were not reasonably supported by the intrinsic record. To date there have been no findings as to the adequacy of the presuit investigation and whether it was conducted in a manner intended to ignore or overlook the *1377 weakness of the infringement allegations. The circumstances surrounding the presuit investigation, including whether plaintiff demonstrated diligence prior to filings its suits, might be accounted for on remand when determining whether Raylon’s actions support an inference of bad faith.
For the post-Complaint analysis, Raylon defers to its technical expert, Dr. Sharp. Review of Dr. Sharp’s declaration reveals no significant effort to explain why Raylon’s interpretation of the pivotally mounted display limitation is the best understanding of the feature in light of the patent disclosures. See J.A. 3991-4008. The declaration simply states Dr. Sharp’s tacit approval of Raylon’s expansive positions through cursory conclusions indicating that there is “no restriction” that would stand in the way of Raylon’s effort to link the claim language to the perspective of the viewer. J.A. 4001-02. Dr. Sharp made no reasonable attempt to create a nexus between the asserted patent and the accused devices. Raylon’s heavy and continued reliance on an uninformative declaration calls into question whether the statements were predicated in good faith.
Raylon’s elevation of extrinsic declarations again ignores Federal Circuit precedent, which, at minimum, requires that structural discrepancies that lie at the basis of an infringement allegation be explained according to the intrinsic evidence. Bell & Howell Document Mgmt. Prod. Co. v. Altek Sys., 132 F.3d 701, 706 (Fed.Cir. 1997) (“Patents should be interpreted on the basis of their intrinsic record, not on the testimony of such after-the-fact ‘experts’ that played no part in the creation and prosecution of the patent.”) (citing Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1578 (Fed.Cir.1995)). I submit that an inference of bad faith may arise where expert conclusions are steadfastly relied upon to “inject a new meaning into terms that is inconsistent with what the inventor set forth in his or her patent and communicated, first to the patent examiner and ultimately to the public.” Bell & Howell, 132 F.3d at 706.
IV. Conclusion
When a court finds a Rule 11 sanction based on conduct involving the allegation and pursuit of patent infringement claims that have been found objectively unreasonable, the court is compelled, if so moved by a party, to undertake a detailed and thorough § 285 inquiry and analysis. I concur with the majority and would reverse and declare this an exceptional case and limit the remand to determination of appropriate sanctions.

. This court recently held that objective baselessness is a question of law based on underlying mixed question of law and fact. Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 687 F.3d 1300, 1309 (Fed.Cir.2012). The Highmark decision did not issue until after the district court denied the § 285 motion. Because I find Raylon's claim construction and infringement positions meritless, the objective analysis would compel the same result regardless of whether we reviewed de novo or for clear error.

. The district court limited its scant subjective intent analysis to general statements that there was no material misconduct because of a low probability of the case having been brought to force a settlement. J.A. 13. These general statements are incomplete following the acknowledgement that Raylon's claim construction positions "stretched the bounds of reasonableness.” J.A. 4. Recognition of the objectively weak contentions was basis enough to further inquire as to bad faith.

. Although Raylon noted at the claim construction hearing that it considers Federal Circuit teachings "somewhat unusual,” it is still bound to adhere to those guidelines— even when such rulings do not suit its litigation strategy. See J.A. 14049.

. As pointed out in the briefing, Raylon misrepresented the claim language — by substituting "pivotable” in place of the "pivotally mounted” limitation — and proceeded to claim construction by relying on an untenable position that was refuted by the '589 patent specification. See J.A. 12239-40; 12247; 12253; 12273-74.