**BURLINGTON NORTHERN RAILROAD CO., Plaintiff,**

v.

**TIME OIL CO., et al., Defendants.**

**TIME OIL CO., Counterclaim, Crossclaim and Third–Party Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD CO., and Boeing Corporation, Counterclaim Defendant and Crossclaim and Third–Party Defendant.**

No. C89–913R.

United States District Court, W.D. Washington, at Seattle.

April 18, 1990.

Paul J. Lawrence, Jillian Barron, Preston, Thorgrimson, Shidler, Gates & Ellis, Seattle, Wash., for plaintiff.

Thomas Richard Lotterman, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., Susan L. Barnes, U.S. Attorney's Office, David R. Lord, Ferguson & Burdell, Seattle, Wash., William H. Bode, John M. Mason, Robert A. Jaffe, William H. Bode & Associates, Washington, D.C., for defendants.

Thomas A. Starrs, John Daniel Ballbach, Perkins & Coie, Seattle, Wash., for third-party defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

This matter comes before the court on defendant's motion for summary judgment. Having reviewed the motion, together with all documents filed in support and in opposition, having heard oral argument and being fully advised, the court finds and rules as follows:

## I. BACKGROUND

Burlington Northern Railroad ("BNRR") has filed suit against defendant Time Oil Inc. ("Time Oil"), seeking recovery of its costs spent for remediation of a hazardous waste site. Time Oil now moves for summary judgment of dismissal for all claims against it by BNRR, arguing that plaintiff's claims are barred by a provision in the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f)(2). Further, Time Oil argues that BNRR has no valid state claim as it is preempted by CERCLA. The sole issue before the court is the legal effect of a 1988 consent decree entered into by Time Oil with representatives of federal, state and city government.

Time Oil and BNRR own adjacent properties included within the "Well 12A" Superfund site in Tacoma, Washington. In the early 1980s, the United States Environmental Protection Agency ("EPA") identified the properties as contaminated with hazardous substances. In 1985, BNRR and the EPA entered into a partial consent decree for cleanup of the BNRR property. The remedial action included BNRR's excavating the contaminated soil from the area. BNRR negotiated the consent decree with the EPA in order to have the agency's assurance that the cleanup would be approved as consistent with the National Contingency Plan. BNRR completed its cleanup in 1985. The money paid (and to be paid by BNRR for future cleanup, if necessary,) is the basis of the suit.

In June 1985, the EPA issued an administrative order against Time Oil, requiring the company to take action to protect against the release of hazardous substances from its property. In December 1986, the EPA initiated a civil suit against Time Oil for failure to take the requested action.[1]

In November 1988, Time Oil, the EPA, the State of Washington, and the City of Tacoma entered into a consent decree, approved, after public notice, by the U.S. District Court. Under the terms of the consent decree, Time Oil agreed to pay $8.5 million plus interest to reimburse the EPA and the state for monies spent to remedy damage to the City's aquifer located within the Time Oil site. The consent decree fully

---

1. The State of Washington brought suit against Time Oil on June 3, 1985. The City of Tacoma intervened in that action in October 1985. In February 1987, the State and City's action was consolidated with the United States' action. It was this consolidated action which was settled by the consent decree.

resolved Time Oil's liability to the United States and the State of Washington with respect to that property. Time Oil now asserts that since § 9613(f)(2) of CERCLA protects parties that settle with the EPA and a state from later contribution claims by other potentially responsible parties, its consent decree with the government insulates it from all liability to BNRR for the railroad's response costs incurred before Time Oil's consent decree was entered into.

BNRR opposes the summary judgment motion, arguing that Time Oil misinterprets CERCLA's contribution protection provision, § 9613(f)(2). BNRR makes a distinction between BNRR's claim in this action—a cost recovery claim pursuant to 42 U.S.C. § 9607(a)—and a contribution claim pursuant to § 9613(f)(1). Time Oil contends that BNRR's action is in actuality a contribution claim, and subject to the restriction of § 9613(f)(2).

## II. DISCUSSION

### A. Summary Judgment Standard

 A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 630–31 (9th Cir.1987); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir.1985). In this case, there are no material facts in dispute. The court is asked to determine the effect of the consent decree entered into by Time Oil, as a matter of law. The question is ripe for summary judgment.

### B. Statutory Provisions

 This is a question of first impression. There appears to be no case law interpreting the effect of CERCLA § 9613(f)(2) on cost recovery suits filed under § 9607(a) for remedial actions conducted prior to the enactment of the Superfund Amendments and Reauthorization Act of 1986 (SARA).

The contested sections of CERCLA in this motion are the contribution sections, 42

U.S.C. § 9613(f)(1) and (f)(2); and the cost recovery sections, 42 U.S.C. § 9607(a) and § 9613(g)(2).

Section 9613(f)(1) states:

*(1) Contribution*

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under 9607(a) of this title.

Section 9613(f)(2) states:

*(2) Settlement*

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement....

These sections on contribution and settlement were added to CERCLA through SARA in 1986. Congress enacted the contribution provisions to address a perceived problem with previous suits by the government against certain potentially responsible parties. *See* 1986 U.S.Code Cong. & Admin.News 2835, 2861–62. Previous to the enactment of SARA, it was unclear whether a private right of action existed for contribution to defendants from other potentially liable parties. *See United States v. New Castle County*, 642 F.Supp. 1258 (D.Del.1986). Congress sought to codify this right through the addition of § 9613(f) to CERCLA.

Prior to the enactment of SARA, the specific statutory authority supporting a right of action under CERCLA was § 9607(a)(1–3). This section states in pertinent part:

Section 9607. *Liability*

(a) Covered persons; scope

Notwithstanding any other provisions or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a ... facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at

which such hazardous substances were disposed of ... shall be liable for— ... (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

It is this section of CERCLA under which BNRR pursues its claim for costs against Time Oil, and which it distinguishes from a contribution action under § 9613(f).

### C. Scope of Contribution Protection

The contribution protection contained in § 9613(f)(2) extends only to "matters addressed in the settlement." These matters are outlined in the Time Oil consent decree at pages 8–12. At the time of Time Oil's negotiations with the various government agencies in 1988, Time Oil was already aware of the approximately $500,000 spent by BNRR for the cleanup at the Well 12A site. There was no specific provision in the consent decree indicating any attempt to include the BNRR costs in "covered matters" addressed in the settlement. The consent decree was aimed at resolving Time Oil's liability for the issues raised in the complaints filed in *U.S. v. Time Oil Co.*, Case No. C86–990, and *State of Washington v. Time Oil Co. and BNRR*, 687 F.Supp. 529 (W.D.Wash.1988). Those complaints were filed by the EPA and the state to recover *government* costs spent for cleanup at the Well 12A site.

Congress enacted § 9613(f)(2) for the express purpose of encouraging potentially liable parties to settle, rather than litigate, CERCLA actions brought by the government. As stated by the House Committee on Energy and Commerce in proposing the section:

> The Section will help bring an increased measure of finality to settlements. Responsible parties who have entered into a judicially approved good faith settlement under the Act will be protected from paying any additional response costs to other responsible parties in a contribution action.

Report of the House Committee on Energy and Commerce, *reprinted in* 1986 U.S. Code Cong. & Ad.News at 2835, 2862. Thus, § 9613(f)(2) encourages parties to settle their CERCLA liability by offering them the promise of fully extinguishing their alleged liability.

The clause limiting the application of § 9613(f)(2) to only matters addressed in settlement is congruous with Congress' intent to encourage early settlement between the government and potentially liable parties. Settlement negotiations are presumably conducted with affected parties able to participate and work toward a joint cleanup goal. Previous cleanup activities already conducted and paid for by private parties are not likely to be addressed by the government in negotiations of this sort.

Congress' intent in enacting the contribution protection provision was to allow a settling party to avoid the specter of future litigation after settling with the various government bodies, by providing protection from later collateral attacks by other potentially liable parties who were not willing to come to the negotiating table early rather than later. The settling party is spared the uncertainty of later contribution suits.

The court is presented here, however, with a different situation. As noted, BNRR incurred its cleanup costs in 1985, before SARA was even enacted. At the time of BNRR's negotiations with the EPA and the State of Washington, BNRR's only statutory avenue for a claim against Time Oil was through § 9607(a). BNRR negotiated to implement its cleanup operation with every right to anticipate it could pursue a cost recovery action against Time Oil within the statute of limitations period described in § 9613(g)(2). There is no evidence that BNRR could have anticipated the creation of § 9613(f), or that the new section was intended to retroactively apply to litigation and settlements occurring before 1986.

### D. Other Statutory Provisions

The language of CERCLA includes other distinctions between contribution actions and cost recovery actions that lend weight to the interpretation that Congress intended to maintain the separate avenues of recovery. Section 9613(g), which governs

statutes of limitation, treats the two actions differently. Section 9613(g)(2) provides that "actions for recovery of costs" under section 9607 must be commenced within three years after completion of a removal action or six years after initiation of physical on-site construction of a remedial action. Section 9613(g)(3), on the other hand, requires that actions for "contribution" be brought within three years after the date of judgment in a recovery action or the date of an administrative order or settlement.

In Section 9613(h)(1) discussing judicial review, CERCLA provides that a court may review an action "to recover response costs *or* damages *or* for contribution" (emphasis added).

Also, Section 9607(a) expressly limits the defenses available to such an action. Parties liable under CERCLA, are liable for another party's response costs "notwithstanding any other provision or rule of law and *subject only to the defenses set forth in subsection (b),*" (emphasis added). These defenses are (1) an act of God; (2) and act of war; or (3) an act or omission of an unrelated third party. Congress expressly did not include settlement agreements as a defense to direct cost recovery actions, nor did it amend any portion of this section when it enacted SARA.

Based on the above analysis, the court rejects Time Oil's arguments as to BNRR's federal claims.

### E. State Claims

 Time Oil has also moved for dismissal of BNRR's state law claims for cost recovery, based on the same objections as it raised to the federal claims. Since Time Oil has settled with the State of Washington, resolving all liability to the state, defendant makes the same argument for barring BNRR's state claims. Washington's Hazardous Waste Cleanup Act, RCW § 70.105B.010 et seq. and the Washington State Model Toxic Cleanup Act, to be codified at § 70.105D.010 et seq., contain language identical in substance to CERCLA's contribution protection provision. Time Oil

also argues that any claim under Washington law is preempted by CERCLA.

Based on the above analysis, the court holds that BNRR's state law claims for cost recovery are not barred by the contribution protection language found in RCW § 70.105B.010 et seq. and § 70.105D.010 et seq. Thus, there is no conflict with the CERCLA provisions, and no justification for preemption by the federal statute.

### III. CONCLUSION

The court concludes that BNRR's federal and state claims for cost recovery are not barred by the consent decree between Time Oil and the government agencies.

THEREFORE, defendant Time Oil's motion for summary judgment is DENIED.