UNITED STATES of America, Plaintiff,

v.

U.T. ALEXANDER, et al., Defendants.

Civ. A. No. G–86–267.

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 8, 1991.

Robert Darden, Asst. U.S. Atty., Houston, Tex., James Robertson, Peter Stinson, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., Henry K. Oncken, U.S. Atty., Houston, Tex., Craig E. Johnson, Sr. Atty., U.S. Dept. of Justice, Environmental Enforcement Section, Washington, D.C., for U.S.

Robert A. Hall, Mark C. Watler, Atty. in Charge, Woodard, Hall & Primm, Houston, Tex., Preston Shirley, Mills, Shirley, Eckel & Bassett, Galveston, Tex., for Monsanto Co.

Cynthia Hoff Stewart, Jones, Day, Reavis & Pogue, Dallas, Tex., for Marathon Petroleum Co.

Levert J. Able, Able, Barrow & Able, Houston, Tex., for Sam Bishkin.

Ervin A. Apffel, Jr., Atty. in Charge, McLeod, Alexander, Powel & Apffel, Galveston, Tex., James D. Pickett, Amoco Oil Corp., Chicago, Ill., for Amoco Chemicals Co.

David E. Dearing, Asst. Atty. Gen., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for National Aeronautics and Space Admin.

Dwight W. Miller, Thompson & Mitchell, St. Louis, Mo., for Mercantile Bank N.A., trustee.

Eugene B. Wilshire, Jr., Wilshire, Scott, Halbach & Dyer, Houston, Tex., for Malone Trucking Co.

Charles R. Herbeck, Mabry, Herbeck & Chilton, Texas City, Tex., for Texas City Refining Inc.

F. Walter Conrad, Baker & Botts, Houston, Tex., for GAF.

Debra L. Baker, Fulbright & Jaworski, Houston, Tex., for National Distillers and Chemical Corp. and Premium Settlor Vacuum Tanks, Inc.

Dennis P. Reis, Atty. in Charge, Sidley & Austin, Chicago, Ill., Darryl W. Malone, Jenkens & Gilchrist, P.C., Houston, Tex., for Union Carbide & Plastics Co.

James E. McNerney, Atty. in Charge, Houston, Tex., for Borden, Inc., Southern Pacific Transp. Co., Texas City Terminal Ry. Co., Chromalloy American, Inc., Maxus Energy Corp., Occidental Chemical Corp., Velsicol Corp. and Samuel Bishkin.

## ORDER OF SANCTIONS AND PARTIAL DISMISSAL OF DEFENDANT MALONE TRUCKING COMPANY'S CROSS–ACTION

KENT, District Judge.

Pending before the Court are the numerous Motions to Dismiss and Motions for More Definite Statement made by both the principal Defendants in this litigation, as well as the *de minimis* Defendants, who were the parties to the Partial Consent Decree executed in August, 1987, which were filed in response to the apparently all-encompassing Cross-action filed with this Court by Malone Trucking Co. ("Malone"), on May 1, 1991 (Instr. # 248).

It is patently clear to the Court that the filing of the Cross-action was largely motivated by Malone's indignation at being kept in this lawsuit as a principal player. It is way too late in this over five year old litigation process to allow such an obvious attempt to forestall its conclusion, or to coerce Malone's dismissal by creating mass confusion only weeks before trial. In addition, service, when ultimately effected on many of the other Defendants, was sloppy, improperly handled, and in many instances deficient. As it pertains to the *de minimis* cross-defendants, the statutorily barred cross-action appears calculated to do nothing more than delay an already long, drawn-out litigation process, and as such, constitutes an act of bad faith, and on its

face appears to be a per se violation of Fed.R.Civ.P. Rule 11.

The Court expressly finds that it would be a violation of the Partial Consent Decree, which was executed between the United States and the *de minimis* parties to allow such a claim to continue as to those premium settling Defendants who were parties to the Decree. Therefore, this Court has decided to DISMISS Malone's Cross-action to the extent that it pertains to the Premium Settling Defendants which were also parties to the Partial Consent Decree. This order does not, however, dismiss any such claim against Union Carbide because even though it was a party to the Consent Decree, there is some controversy concerning it's proper place in this litigation and it is therefore to be considered a principal Defendant for these purposes only. As regards all other principal parties in the lawsuit, the Court will also allow Malone's Cross-action to remain pending, and the Court grants leave to amend, as herein provided.

*Applicable Facts and Law*

This case was brought by the United States pursuant to the provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.* In August, 1987, many Defendants whose liability was considered *de minimis* settled with the United States by executing a Partial Consent Decree. Under this Agreement, these Premium Settling Defendants admitted no liability, but each paid a certain sum (approx. $15,000) in order to avoid the prohibitive defensive costs of litigating a case of this type. In exchange, these parties received guarantees that the amount they paid would be the full extent of their liability in this case, and they would not be subjected to any further claims for contribution or indemnity by anyone not parties to the Decree. 42 U.S.C. § 9613(f) and § 9622(g)(5) of CERCLA specifically prohibit any claims for contribution or indemnity from *de minimis* defendants who choose to resolve their liability with the government through consent decrees similar to the one executed in the instant case.

§ 9613(f)(2) "Settlement

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement."

§ 9622(g)(5) "De minimis settlements

A party who has resolved its liability to the United States under this subsection shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially responsible parties unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement."

Thus, it is clear to this Court that to the extent that Malone's Cross-action was meant to encompass these Premium Settling Defendants, it is barred as a matter of law.

In *Central Illinois Public Serv. v. Indus Oil Tank*, 730 F.Supp. 1498, 1502 (W.D.Mo. 1990), the Court commented on CERCLA, stating: "Generally, CERCLA provides a scheme whereby the persons responsible for generating, handling, brokering and/or transporting hazardous materials ultimately may be held liable for treating or disposing of them ... The parties may be liable directly to the government, or to each other. The statute provides elaborate means for resolving that liability ... *The scheme is designed to promote quick action by encouraging settlements among potentially responsible parties.*" (emphasis added).

In *Central,* the EPA and some parties reached a settlement which included a covenant not to sue. However, the plaintiffs brought a lawsuit to obtain contribution from defendants, arguing that actions grounded in law outside of CERCLA were

not precluded. The Court found that Congress "... intended to preclude contribution actions by non-settling parties against those parties which settled with the government, while leaving the contribution actions under state law available *against parties not subject to CERCLA*.... As for parties which are liable, a contribution claim can be maintained *if* that party has not resolved its liability with the United States or a State. *United States v. Seymour Recycling Corp.*, 686 F.Supp. 696, 699 (S.D.Ind.1988)." (emphasis added) *Id.* at 1505. The court concluded:

> "Determining whether [the plaintiffs] can maintain a counterclaim for contribution, then is a simple matter of figuring whether the plaintiffs are liable under CERCLA and, if so, whether they settled with the United States. First, as noted above, plaintiffs have settlement agreements with the United States (EPA) and those settlements have administrative approval. Second, by virtue of the settlement agreements, the plaintiffs are clearly liable parties under CERCLA—although they have resolved their liability by the settlements. Therefore, the protections of Section 9613(f)(2) apply to them to preclude and preempt actions for contribution." *Id.*

The Court also held that the non-settling defendants would not be allowed to maintain claims for indemnity against any of the settling defendants.

The parties in the instant case are all subject to CERCLA and have resolved any liability thereunder by joining in the Partial Consent Decree. It is this exact scenario that Congress had in mind when it decided to protect these parties from any further liability, including claims for contribution or indemnity. Therefore, it is clear that Malone cannot reach them for any type of contribution.

One week before the *Central Ill.* Court decided that no contribution would be allowed from settling parties, the Court in *Allied Corp. v. Frola*, 730 F.Supp. 626, 638 (D.N.J.1990) came to an identical conclusion. That Court quoted CERCLA, finding that 42 U.S.C. § 9613(f)(2) "... addresses

the effect CERCLA settlements have on non-settling parties and provides that 'a person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in a settlement.'"

The *Allied* Court disagreed with the property owner's argument that they had a right to keep the third-party settling defendants in the case in order to determine whether they were joint tortfeasors and what percentage of fault was attributable to those settling parties. In refusing to allow the claim for contribution, the Court stated:

> "This interpretation is consistent with the Congressional purpose of encouraging settlement of CERCLA cases. It provides the settlors with a statutory signal that any settlement they reach would end their liability in the case. Hence, by settlement, their liability in the case is extinguished. Since the non-settlors remain jointly and severally liable, they must make good the balance regardless of whether the settlor pays less than its proportionate share of liability." (quoting from *In re Acushnet River and New Bedford Harbor*, 712 F.Supp. 1019, 1027 (D.Mass.1989)) ... [T]he Congressional directive is that non-settling defendants' contribution claims will be barred, and they will be credited only with the amount of the settlement and nothing more. 730 F.Supp. at 638, 639.

In *U.S. v. Rohm & Haas Co.*, 721 F.Supp. 666 (D.N.J.1989), the Court was considering a motion for entry of a partial consent decree, embodying a *de minimis* settlement negotiated pursuant to CERCLA, very similar to the one before the Court in the instant case. The Court carefully considered the effects of such a decree, looking to § 122(g)(5) of CERCLA (42 U.S.C. § 9622(g)(5), "... which directly addresses the effect of a *de minimis* settlement upon non-settlor's contribution rights:

> A party who has resolved its liability to the United States under this subsection

shall not be liable for claims for contribution regarding matters addressed in the settlement. *Such settlement does not discharge any of the other potentially responsible parties unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.*" (emphasis added by *Rohm* court) 721 F.Supp. at 676.

Thus, the Court concluded that "while non-settlors lose their contribution rights, defendants who are parties to a CERCLA settlement retain the right to seek contribution from the *non*-settling PRPs [potentially responsible parties]. And of course, the Government retains the right to bring or maintain an action and seek relief from non-settling PRPs if the settlement provides it with less than complete relief." *Id.*

The *Rohm* Court saw no reason to deviate from the clear expression of Congressional intent, since Congress had so plainly indicated that non-settling defendants' contribution claims would be barred, and they would be credited only with the amount of the settlement and nothing more.

The Court also found that while a party has the opportunity to benefit from a settlement, the party is not required to join in such settlement. By failing to settle, however, the non-settling party gambles, thus exposing itself to potentially greater costs in the long-term. There is no guarantee that the non-settlor will not ultimately be required to pay more than its "fair share" of the final cleanup costs. Otherwise, there would be no incentive for Government plaintiffs to enter into such settlements if by doing so they would not decrease their enforcement costs, but rather would have to take on the burden of showing that the settling parties paid their equitable share. *Id.* at 678.

When refusing to allow a non-settling party to present a claim for contribution, the Court in *U.S. v. Union Gas Co.*, 743 F.Supp. 1144, 1152 (E.D.Pa.1990), explained the policy reasons for refusing to allow contribution from settling parties:

"A District Court in Massachusetts has described the § 9613(f) as a carrot and stick combination. The carrot the EPA can offer potential settlors is that they need no longer fear that a later contribution action by a non-settlor will compel them to pay still more money to extinguish their liability. In addition, settlors themselves are enabled to seek contribution against non-settlors. 42 U.S.C. § 9613(f)(3)(B). The stick is that if the settlor pays less than its proportionate share of liability, the non-settlors, being jointly and severally liable, must make up the difference ... The language of CERCLA plainly envisions the likelihood of resultant disproportionate liability: the potential liability of the others is reduced 'by the amount of the settlement,' and not by the settlor's proportionate share of any damages ultimately determined to have been caused." (citations omitted) *Id.* at 1152.

The law is clear that Malone cannot proceed with its Cross-action against any of those *de minimis* parties who signed the Partial Consent Decree, in August, 1987. Those parties are protected from just such claims for contribution by virtue of their willingness to settle early on with the government.

■ Nevertheless, when a *de minimis* party, who was a signatory of the Partial Consent Decree, can be shown to have contributed more waste than was originally believed, then that party may be brought back into the litigation as a principal party. This appears to be the case with Union Carbide. Despite having been a party to the Partial Consent Decree, it now appears possible that the Company was more involved in the activities leading to this case than was originally believed. In the Partial Consent Decree, the Government reserved the right to bring a party back into the litigation as a principal player if that party could be shown to have contributed more than 1%, the division instituted by the Government to distinguish *de minimis* parties from principal parties. Efforts to show Union Carbide's involvement exceeded 1% are underway, and if proven, because the liability in these type of cases is joint and several, Malone certainly has the right to institute a cross-action against Un-

ion Carbide for contribution. The protections offered by the Partial Consent Decree are not impervious to attack, but neither are they easy to unravel. Because of Union Carbide's tenuous position at this time, the Court will allow Malone's Cross-action to remain pending against it until such time as Union Carbide's true posture in the litigation is resolved. In the event it is confirmed to be a *de minimis* player, the Cross-action against it will be dismissed as well.

> "Courts must strike a balance between the policy behind CERCLA's contribution provisions and the policy behind the act as a whole. The contribution provisions were designed to encourage settlement of CERCLA actions. The policy behind the statute as a whole is to give the federal government the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous wasted disposal."

*Union Gas,* 743 F.Supp. at 1152.

The Cross–Plaintiff, Malone, had a chance to withdraw or clarify the non-applicability of the Cross-action to the *de minimis* defendants when their responsive pleadings brought the statutory bar provisions to Malone's attention. However, Malone continued asserting the applicability of the cross-action to those defendants on the basis that the statutory provisions did not apply to them, and gave no basis for a good faith modification or reversal of the existing law.

*The Court's Rulings*

In keeping with the above policy considerations, the Court hereby GRANTS the motions of the various *de minimis* parties and hereby DISMISSES Malone's Cross-action as to all of those premium settling Defendants who were parties to the Partial Consent Decree, except for Defendant Union Carbide, to the extent discussed immediately above. The Court, however, DENIES any motions to dismiss filed by the principal parties in the litigation and leaves the Cross-action pending as those parties.

However as regards such, pursuant to Fed.R.Civ.P. Rule 12(e), Malone is hereby ORDERED to file no later than August 23, 1991, a more definite statement of its cross-claim, against the allowed cross-defendants in order to sufficiently notify those remaining cross-defendants of the legal nature of such claim, and of the underlying allegations of fact supporting it, including at least the following matters:

(a) The existence of any indemnification agreements, or the legal and factual basis for any claim for indemnity against the remaining cross-defendants;

(b) The statutory or common law basis for any claims of contribution against the remaining cross-defendants;

(c) A clear and concise statement of facts upon which any such claims of contribution or indemnity are based.

This case will proceed as presently scheduled on the non-jury docket, and the Court hereby ORDERS that the United States' Motion to Strike Jury Demand be GRANTED, and hereby ORDERS that Malone's Co.'s Motion to Reconsider the Court's Denial of Trial by Jury be DENIED.

The Court hereby admonishes *each* of the parties to be expressly mindful of the fact that it will allow no continuances in this case, nor will it deviate from its three presently scheduled trial dates, except on its own motion, and only in the event of a conflicting criminal setting. *Any* action on the part of a party which is perceived by the Court to hinder or delay the timely resolution of this case will be met with the harshest penalties including the striking of that party's pleadings, and such acts may also be considered by the Court to constitute civil and/or criminal contempt.

*Sanctions Generally*

Because it is patently clear to the Court that the filing of the Cross-action was largely motivated by Malone's indignation at being kept in this lawsuit, and as it pertains to the *de minimis* defendants, is statutorily barred, the Court finds such to be a per se violation of Fed.R.Civ.P. Rule 11 and of 28 U.S.C. § 1927.

28 U.S.C. § 1927 imposes a continuing obligation on attorneys by prohibiting the persistent prosecution of a meritless claim. Pursuant to its inherent power, a District

Court may award attorney's fees to the prevailing party when the losing party has acted in bad faith in actions that led to the lawsuit or in the conduct of the litigation. *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 871 (5th Cir.1988) (en banc). The Court enjoys significant discretion to impose sanctions pursuant to § 1927 or its inherent powers. Where the Court finds there has been a violation Rule 11, the imposition of sanctions is mandatory. But, the Court has broad discretion in choosing the appropriate penalty. Thus, while the type of sanction imposed lies within the discretion of the District Court, Rule 11 expressly authorizes the awarding of monetary sanctions, such as an award of the reasonable expenses, including attorney's fees, incurred by the nonviolators as a result of the violator's bad faith filings.

*Rule 11 Sanctions in the Fifth Circuit*

The Fifth Circuit has been clear, consistent and explicit in setting forth the rules governing the imposition of sanctions pursuant to Fed.R.Civ.P. Rule 11.

In *Spiller v. Ella Smithers Geriatric Center*, 919 F.2d 339, 345 (5th Cir.1990), the Fifth Circuit explained the policy reasons which support the existence of Rule 11: "Rule 11 encourages the policy of truth and candor toward the tribunal by sanctioning an attorney for filing court papers that are legally or factually unsupported or filing documents for solely dilatory reasons. Rule 11's central purpose is to deter baseless filings and streamline the administration of justice." (citations omitted).

In *Hale v. Harney*, 786 F.2d 688, 692 (5th Cir.1986), the Court explained, "Neither we nor the trial courts sit to serve as implements of financial torture and delay, to be applied to hapless parties at the pleasure of counsel." They went on to decide that the 1983 amendments to Rule 11 "... added a requirement that the pleader's belief be one formed after reasonable inquiry that the pleading is both well grounded in fact and warranted by existent law or reasonably foreseeable legal developments." Thus, the previously acceptable subjective good faith standard alone is not enough anymore to avoid the imposition of sanc-

tions pursuant to Rule 11. See also *Stites v. I.R.S.*, 793 F.2d 618, 620 (5th Cir.1986).

In reviewing the imposition of sanctions by District Courts, the Fifth Circuit determines whether the District Court abused its discretion. "Rule 11 is not a rule of strict liability. It imposes a standard of reasonableness measured objectively. The law is simple and poses no threat to competent lawyers. Simply put, a lawyer must have a basis for his pleadings." In *Southern Leasing Partners Ltd. v. McMullan*, 801 F.2d 783, 789 (5th Cir.1986), the Court refused to allow the impending limitations deadline to excuse the attorney's conduct of suing a defendant in the hopes of finding some basis in the evidence uncovered later in the case. "Failure to do the work of a lawyer cannot be explained away by the approaching limitations bar." *Id.* at 788.

The Court found the plaintiff's claims "manifestly and patently frivolous" and imposed sanctions *sua sponte* at the appellate level in addition to upholding those imposed by the District Court in *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986).

"This Court has no desire to deter any litigant from advancing any claim or defense which is arguable supported by existing law, or any reasonably based suggestion for its extension, modification, or reversal. Positions thus taken cannot be considered frivolous, although they may be unsuccessful and indeed may be give short shrift. But claims and defenses which fall outside of this broad umbrella may prove frivolous." *Id.*

In finding the purpose of Rule 11 is to place a more stringent duty on attorneys, the Court in *Robinson v. Nat. Cash Register Co.*, 808 F.2d 1119, 1130 (5th Cir. 1987), found that Rule 11 is addressed to two problems: the problem of frivolous filings and the problem of misusing judicial procedures as a weapon for personal or economic harassment.

"We hold that violation of only one of the two clauses in Rule 11 is sufficient for a district court to impose sanctions. Thus, where a district court finds that a party's

or signing attorney's conduct is improper or unreasonable under Rule 11, the Court is required to fashion an appropriate sanction. We acknowledge that sanctions should not be lightly imposed given the impact they may have on both the attorney's and the party's reputations. Rule 11 is not intended to chill an attorney's enthusiasm or creativity. Not is it meant to make lawyers strictly liable if a court rules against them on the merits. However, while enthusiasm and innovations in advocacy are to be encouraged, an attorney is under the correlative obligations to conduct himself in a manner consistent with the proper functioning of the judicial system. A person cannot proceed with impunity when his argument has no merit." (citations omitted). *Id.* at 1130–31.

In *Thomas v. Capital Sec. Services, Inc.,* 812 F.2d 984, 988 (5th Cir.1987), the Fifth Circuit set forth the objective standard by which to judge attorney performance for Rule 11 purposes:

"Upon signing a pleading, motion. or other document, an attorney certifies that he has complied with the affirmative duties required by rule 11. These affirmative duties included (1) that the attorney has conducted a reasonable inquiry into the facts which support the document; (2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument 'for the extension, modification, or reversal or existing law;' and (3) that the motion is not interposed for purposes of delay, harassment, or increasing costs of litigation. Rule 11 is violated if any of the above obligations are breached because each is an independent duty of a signing attorney."

The Fifth Circuit, sitting *en banc*, confronted the Rule 11 issue again in *Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 871 (5th Cir.1988) (*en banc*), stating it sought "to ameliorate th[e] confusion and modify existing inequities to the extent possible by clarifying some of the more important issues presented by the application of Rule 11."

"Growing concern over misuse and abuse of the litigation process prompted rulemakers to amend Rule 11 in 1983 to reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of attorneys and reinforcing those obligations through the imposition of sanctions." *Id.* at 870.

The Court reiterated that the reasonable inquiry obligation under Rule 11 applies to each and every paper signed during the course of the proceedings and that the imposition of sanctions is mandatory where a court finds a Rule 11 violation. The attorney's conduct is evaluated at the time the pleading, motion or other paper is signed.

The Court rejected the view that Rule 11 imposes a continuing obligation upon the attorney, but stated: "As a practical matter, while the review of an attorney's conduct for Rule 11 purposes is isolated to the moment the paper is signed, virtually all suits will require a series of filings. This series of filings may indicate a pattern of attorney conduct of some consequence." *Id.* at 875.

The court held that the standard of review to be used to evaluated the imposition of sanctions under Rule 11 was to be an abuse of discretion standard. "We ... believe that the imposition or denial of sanctions of necessity involves a fact-intensive inquiry into the circumstances surrounding the activity alleged to be a violation of Rule 11. The perspective of the District Court is singular. The trial judge is in the best position to review the factual circumstances and render an informed judgment as he is intimately involved with the case, the litigants, and the attorneys on a daily basis." *Id.* at 873.

The District Court's determination of whether the attorney in question made a reasonable inquiry into the law depends upon the particular facts of the case. However, the Fifth Circuit outlined several factors which might be considered:

"the time available to the signer for investigation; the extent of the attorney's reliance upon his client for the factual

support for the document; the feasibility of a prefiling investigation; whether the signing attorney accepted the case from another member of the bar or forwarding attorney; the complexity of the factual and legal issues; and the extent to which development of the factual circumstances underlying the claim requires discovery ... the time available to the attorney to prepare the document; the plausibility of the legal view contained in the document; the pro se status of a litigant." *Id.* at 875.

The Court discussed the subject of mandatorily imposed sanctions at great length and concluded:

"In sum, a district court must impose sanctions once a violation of Rule 11 is found, but the district court retains broad discretion in determining the 'appropriate' sanction under the rule. What is 'appropriate' may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances. Whatever the ultimate sanction imposed, the district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose." *Id.* at 878.

When the court imposes fees and/or expenses as sanctions, these must be "reasonable:"

"What constitutes 'reasonable expenses' and a 'reasonable attorney's fee' within the context of Rule 11 must be considered in tandem with the rule's goals of deterrence, punishment, and compensation. In this respect, we note 'reasonable' does not necessarily mean actual expenses..The finding necessarily embraces an inquiry by the court as to the extent to which the nonviolating party's expenses and fees could have been avoided or were self-imposed ... The duty is one of mitigation; it rests on the concept that the victim of a frivolous lawsuit must use reasonable means to terminate the litigation and to prevent the costs of that frivolous suit from becoming excessive." *Id.* at 879–880.

On the subject of requiring specific findings of fact and conclusions from the trial court when sanctions are imposed, the Fifth Circuit in *Thomas* stated:

"We reject a rule that would impose upon district courts the onerous and often time-consuming burden of making specific findings and conclusions in all Rule 11 cases. In doing so, it should be clearly understood that when the basis and justification for a Rule 11 decision is not readily discernible on the record, an adequate explanation by the trial court for the decision will be necessary.... If the sanctions imposed are substantial in amount, type, or effect, appellate review of such awards will be inherently more rigorous; such sanctions must be quantifiable with some precision. Therefore, justification for the Rule 11 decision in the record must correspond to the amount, type, and effect of the sanction applied." *Id.* at 883.

See also *Foval v. First Nat. Bank of Commerce in New Orleans,* 841 F.2d 126, 130 (5th Cir.1988) (citing *Thomas* ); *Smith Intern., Inc. v. Texas Commerce Bank,* 844 F.2d 1193 (5th Cir.1988) (merely because plaintiff's and their counsel were mistaken as to the law does not mean that the mistake was unreasonable); *Corpus Christi Taxpayers v. Corpus Christi, Texas,* 858 F.2d 973 [5th Cir.], rehearing denied 860 F.2d 437, *cert. dismissed* 109 S.Ct. 1928, 490 U.S. 1032, 104 L.Ed.2d 400, *cert. denied* 109 S.Ct. 2064, 490 U.S. 1065, 104 L.Ed.2d 629 [1989]; *St. Amant v. Bernard,* 859 F.2d 379 (5th Cir.1988); *Traina v. U.S.,* 911 F.2d 1155, 1158 (5th Cir.1990); *Willy v. Coastal Corp.,* 915 F.2d 965 (5th Cir.1990).

After finding that "a conclusory allegation contrary to current jurisprudence that is made without any support whatsoever does not represent a good faith argument to modify existing law," the Fifth Circuit Court in *Spiller v. Ella Smithers Geriatric Center,* 919 F.2d 339, 346 (5th Cir.1990), went on to discuss notice and due process requirements pursuant to Rule 11:

"Rule 11 sanctions obviously must comport with due process requirements and Jurisprudence has held similarly.... The notice requirement for Rule 11 sanctions differs depending on the conduct subject to review ... Due process does not require that notice be given to the offending party in every instance before a court can impose sanctions under Rule 11.... Simply giving a chance to respond to the charges through submission of a brief is usually all that due process requires.... Although giving the violator a hearing before the court imposes sanctions may be preferable, this court declines to adopt a per se rule mandating such a presanction hearing." (citations omitted)

*Id.* at 346–47.

On the type of sanctions which might be imposed, the Court stated that although Rule 11 does not provide any "free passes" to litigants who violate its mandate; there is a "duty to mitigate" expenses and fees on the part of the nonviolating party who is forced to respond to the sanctionable conduct of the violator. Additionally, the *Spiller* Court stated that *"Thomas* also directs that a sanctioned attorney who is ordered to pay the opposing counsel's expenses may only be liable for *reasonable* attorney's fees. Finding an expense to be reasonable requires a court to examine the extent to which the nonviolating party's expenses and fees could have been avoided." (emphasis in original) (citations omitted) *Id.* at 347.

*The Court's Evaluation of Malone's Explanation of Its Actions*

In keeping with requisite fairness and due process, the Court entered its Order (Instr. # 293) notifying Malone of its tentative intent to dismiss the cross-action against the *de minimis* Defendants and to impose sanctions for Malone's bad faith conduct. Malone was thereby expressly given an opportunity to respond in writing prior to the hearing and orally at the hearing held on July 31, 1991, and did respond both orally and in writing, by stating several reasons why sanctions should not be imposed.

Malone's first reason is that many of the response costs sought by the Government from Malone and the other principals were incurred prior to the enactment of the 1986 "SARA" contribution bar provisions. Thus, Malone claims that the contribution bar provisions do not protect the settling Defendants from claims for contribution for response costs incurred prior to those protective statutory provisions. The Court disagrees with Malone's conclusions, and finds that the settling Defendants are protected from all claims for contribution arising out of their CERCLA liability, unless they are formally reinstated in the litigation as principal defendants as a result of their contributing more than 1% of the total waste, or for some other reason as allowed for in the settlement, which would subject a settling defendant to further liability.

In 1986, certain CERCLA provisions went into effect which were meant to protect those parties that chose to settle with the Government early. Two of these provisions specifically bar non-settlors from petitioning for and receiving contribution or indemnification from settling parties (See 42 U.S.C. § 9613(f)(2) & § 9622(g)(5)). The statute allows such contribution costs to be recovered pursuant to state law if possible for *parties who are not liable under CERCLA* (see 42 U.S.C. § 9607(e)(2) & § 9652(d)).

However, not only are the *de minimis* parties in the instant case liable parties under CERCLA for purposes of avoiding such contribution claims, but the Partial Consent Decree which was agreed upon in August and finally approved by the Court on October 20, 1987, sets forth the limits of that liability and the settlement terms agreed upon which released those parties from any further liability. The spectre of the potentially enormous response costs and the defensive costs which could be incurred in defending this lawsuit no doubt prodded the *de minimis* parties into a settlement in the first place, just as Congress envisioned. It was in order to encourage just such settlements and to protect just such cooperative parties, that Congress en-

acted the "SARA" contribution bar provisions. Much of the knowledge of the enormity of the response costs in the instant case had already disseminated among the parties, encouraging them to join in the settlement, and the settlement in the instant case was approved long after the adoption of the SARA contribution bar provisions. Thus, the settlement is clearly controlled by such provisions, and there is no need for a retroactive application of SARA here as is alleged by Malone in its Response.

Malone cites *Burlington N. R.R. Co. v. Time Oil Co.*, 738 F.Supp. 1339 (W.D.Wash.1990) as its authority for claiming that "SARA's contribution bar provisions do not bar contribution actions for cleanup costs which were incurred prior to the enactment of SARA." However, the *Burlington* Court characterized that action as one for recovery of costs previously paid rather than for contribution, thus getting around the contribution bar provisions.

The Court was obviously swayed by the perceived unfairness of those particular facts and made clear distinctions between the two types of actions when stating in the dicta relied upon by Malone that "previous cleanup activities already conducted and paid for by private parties are not likely to be addressed by the Government in negotiations of this sort." *Id.* at 1342. Under those facts, the Court felt the plaintiff could not have anticipated the creation of the new contribution bar provisions and felt it would be unfair to retroactively apply those sections. "Congress expressly did not include settlement agreements as a defense to *direct cost recovery* actions, nor did it amend any portion of this section when it enacted SARA." (emphasis added) *Id.* at 1343.

Malone's second argument maintains that "a non-settling defendant may pursue contribution under state law for liability for response costs, notwithstanding the contribution bar provisions of CERCLA as amended by SARA." This is a blunt misstatement of the law and is completely contrary to the holdings of the cases cited by Malone itself.

In *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651 (N.D.Ill. 1988), *aff'd*, 861 F.2d 155 (7th Cir.1988), the Seventh Circuit Court did not consider the issue of liability arising under state law because it found that the suppliers could not be considered "owners" for liability purposes. The district Court found that the suppliers were *not liable under CERCLA, and therefore, the owners could proceed under state law contribution theories.* However, on the facts of that case, the Court found no liability under state law either. The *Hines* Court emphasized the fact that the plaintiff could proceed under state law *because* the defendants were *not* liable parties under CERCLA.

"The courts did not state or suggest that CERCLA preempts any state law remedies to recover the costs of site cleanup from parties who are not liable under CERCLA but are potentially liable under state law.... Accordingly, we hold that CERCLA does not bar an action available under state law for contribution for costs incurred as a result of the decontamination of a hazardous waste site against parties not liable for contribution under CERCLA. We have already held, in the previous section of this order, that the undisputed facts demonstrate that Osmose and the Creosote Defendants are not responsible parties under CERCLA and thereby escape CERCLA liability. Therefore, Hines may seek contribution to the extent that state law provides a remedy." *Id.* at 658.

In the instant case, this Court considers the *de minimis* parties to *be liable parties under CERCLA*, but their liability is already fixed, pursuant to their settlement with the Government. As liable parties under CERCLA, the parties are therefore protected from state law contribution actions.

In *United States v. Hooker Chemical & Plastics Corp.*, 739 F.Supp. 125 (W.D.N.Y.1990), the Court found the County not liable under CERCLA or state law. After considering the various cases offered by the County including *Hines, supra*, which indicated that federal law rather

than state law should determine the availability of an action for contribution *against parties that are liable under CERCLA,* the Court concluded that the County had read too much into the case law upon which it relied, and a party liable for CERCLA response costs is not barred from pursuing contribution for those costs under state law. However, the Court refused to allow contribution either under CERCLA or New York state law because the defendant was a County of New York, and thus a municipality, and found that no special relationship existed between the parties which could overcome the barrier which shielded the County from liability as a municipality.

Because the County in *Hooker* was not found to be a party liable under CERCLA, the right to pursue an action for contribution under state law had not been foreclosed. Thus, the *Hooker* Court focused more closely on the potential liability of a municipality under New York law than on whether CERCLA barred an action for contribution.

*The Court's Conclusion as to Malone's Response*

■ This Court believes that the *Hooker* Court incorrectly interpreted the law presented by the County, and while acknowledging that Court's authority to rule how it sees fit, feels in no way bound by that decision. This appears to be a case of first impression in the Fifth Circuit, and this Court must therefore interpret the law in the spirit of and within the anticipated mandates provided by the Fifth Circuit. We feel that the proper interpretation of the law and the statutory authority presented to this Court is that CERCLA provides the remedy to the extent parties are liable under CERCLA, and as such all claims for contribution from a *de minimis* party who choses to settle with the Government are statutorily barred. Where a party is not liable under CERCLA, then state law contribution remedies to the extent they exist may be pursued against those parties. However, it is inconceivable to this Court that Congress, wanting to encourage parties to settle early with the Government, would so carefully fashion

protections against contribution claims under CERCLA, but then leave those same parties exposed to similar liability by allowing state law contribution schemes to be pursued. The *Hooker* court's type of reasoning completely contradicts the clearly expressed Congressional intent of providing protection for those parties willing to settle with the Government early in the claims process, thereby avoiding an expensive and lengthy litigation. This Court expressly rejects the holding in *Hooker,* and concludes that where a party is liable under CERCLA, and has entered into an approved settlement with the Government, affording it the protections from contribution found in 42 U.S.C. § 9613(f)(2) & § 9622(g)(5), that state law contribution remedies may not be pursued against that party.

*Sanctions in the Instant Case*

■ This Court is genuinely shocked at Malone's blatant disregard for binding statutory law and applicable and controlling Rules of Procedure, and its manifest lack of concern for this Court's frequently stated need to resolve its enormous docket as orderly and expeditiously as possible. Malone's legal theory for inclusion of the *de minimis* Defendants was clearly unreasonable both as a matter of existing law and as a request for its modification or extension. Congress has plainly indicated its encouragement of early settlement in these type of cases by enacting the protective statutes which rewarded early settlors with protection from any later claims for contribution or indemnity from non-settlors. Malone's persistent assertion of its claims for contribution from the *de minimis* Defendants in the face of clearly prohibiting statutory authority is a blatant expression of its bad faith and a per se violation of Rule 11.

IT IS THEREFORE ORDERED that Defendant Malone Trucking Co. pay sanctions in the amount of Ten Thousand Dollars ($10,000.00), *and* that Malone's counsel also pay sanctions in the amount of Ten Thousand Dollars ($10,000.00). In addition Malone and said counsel are jointly and severally ORDERED to pay *all* reasonable

fees and expenses incurred by any *de minimis* party who had to respond to the above discussed Cross-action. Any such party has until August 30, 1991, to file an affidavit stating the amount of such reasonable expenses it incurred. Defendant Malone Trucking Company and its counsel are jointly and severally ORDERED to pay such reasonable expenses to each party, directly, by September 20, 1991, copying this Court with each letter of transmittal of payment, or face a contempt citation and additional sanctions. Defendant Malone Trucking Co. is further ORDERED to file *no* further pleadings with this Court on *any* issue raised in this Order, and the deadlines for sanction payments will not be extended for *any* reason. Violation of this Order will result in further sanctions and possible citations for contempt.

IT IS SO ORDERED.